UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

BARBARA JO MOORE,                      )
                                       )
            Plaintiff,                 )
                                       )
    vs.                                )        Case No. 1:19 CV 109 ACL
                                       )
ANDREW M. SAUL,                        )
Commissioner of Social Security        )
Administration,                        )
                                       )
            Defendant.                 )

**MEMORANDUM**

Plaintiff Barbara Jo Moore brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Social Security Administration Commissioner's denial of her application

for Disability Insurance Benefits under Title II of the Social Security Act ("DIB") and

Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Moore's severe impairments,

she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant

work as a cashier.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I.  Procedural History**

Moore filed her applications for benefits under Title II and Title XVI on August 18, 2015

and August 31, 2015, respectively.   (Tr. 193, 203.)   She claimed she became unable to work on

August 17, 2015, due to fibromyalgia, post-traumatic stress disorder ("PTSD"), depression,

anxiety, and coronary artery disease.   (Tr. 429.)   Moore was 52 years of age at her alleged onset

of disability date.   (Tr. 201.)   Her applications were denied initially.   (Tr. 283-91.)   Moore's

claims were denied by an ALJ on August 29, 2018.   (Tr. 193-203.)   On May 13, 2019, the

Appeals Council denied Moore's claim for review.   (Tr. 1-5.)   Thus, the decision of the ALJ

stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Moore argues that the ALJ erred in determining her RFC, and in finding

she could perform past relevant work.

## II.   The ALJ's Determination

The ALJ first found that Moore meets the insured status requirements of the Social

Security Act through June 30, 2021.   (Tr. 195.)   The ALJ next found that Moore has not

engaged in substantial gainful activity since her alleged onset date of August 17, 2015.   *Id.*   In

addition, the ALJ concluded that Moore had the following severe impairments: lumbar

degenerative disc disease, obesity, and coronary artery disease.   (Tr. 196.)   The ALJ found that

Moore did not have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments.   (Tr. 198.)

As to Moore's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except the claimant can occasionally climb and can
> frequently stoop, kneel, crouch, and crawl.

(Tr. 198.)

Page **2** of **16**

The ALJ found that Moore was capable of performing past relevant work as a cashier. (Tr. 200.)   In the alternative, the ALJ found that Moore could perform other jobs existing in significant numbers in the national economy, such as customer service representative and auto salesperson.   *Id.*   The ALJ therefore concluded that Moore was not under a disability, as defined in the Social Security Act, from August 17, 2015, through the date of the decision.   (Tr. 202.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on August 18, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

> Based on the application for supplemental security income protectively filed on August 31, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 203.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the

Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the

determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1),
416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must
indicate whether medical findings "especially relevant to the ability to work are present or
absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the
degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3),
416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of
severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next,
the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20
C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must
determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2),
416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating
of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental
disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal
the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§
404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

Moore claims error in the ALJ's determination of Moore's RFC, and in his finding that
she could perform past relevant work.   The undersigned will address these claims in turn.

### 1.   RFC

Moore first argues that the RFC determined by the ALJ is not supported by substantial
evidence because the ALJ disregarded her testimony and the medical evidence regarding her
back impairment.   She also contends that the ALJ erred in failing to consider her strong work
history.   Although Moore has multiple severe physical impairments and non-severe mental

impairments,[1] she states that the "most difficult physical problem for her, and the one that causes her to be disabled, particularly in combination with her other issues, is that she has had low back pain for years preceding the date when she quit work because she could no longer deal with the pain." (Doc. 20 at p. 2.)

In determining Moore's RFC, the ALJ first discussed the objective medical evidence of record.[2] He acknowledged that an April 2016 MRI of the lumbar spine showed a left disc protrusion at T12-L1 and L1-2 as well as some minimal changes. (Tr. 199, 559.) As a result, Moore was diagnosed with lumbar radiculopathy and degenerative disc disease of the lumbar spine. (Tr. 199, 561, 637.) The ALJ next stated that the physical examination findings do not suggest that Moore is as limited as alleged. (Tr. 199.) For example, a November 2015 consultative examination performed by Matthew Karshner, M.D., indicated that Moore walked without problems from the waiting area to the weight and height measuring station, walked to the exam room without complaint, had a normal gait, had no edema anywhere on evaluation, normal muscle tone, full strength and sensation in all areas, negative straight leg raises in the supine and sitting positions bilaterally, was able to walk on her heels and tiptoes, was able to tandem walk and hop, was able to squat and return from a squatting position without difficulty, and exhibited no pain behaviors or shortness of breath. (Tr. 199, 554.) The ALJ stated that a January 22, 2016 examination indicated that Moore was in no apparent distress. (Tr. 199, 582.) Additionally, an April 11, 2016 exam indicated that Moore had a normal gait, no edema, and no tenderness in the major joints. (Tr. 199, 591.)

---

[1]Moore makes some references to her mental impairments but does not challenge the ALJ's determination at step two that these impairments were non-severe.
[2]The Court will focus on Moore's pain, particularly her low back pain, as this is the basis of Moore's claims of error.

The ALJ next discussed Moore's daily activities and found that they suggested Moore is not as limited as she alleges.   (Tr. 199.)   In her Function Report completed on September 30, 2015, Moore reported that she has no problem with personal care, prepares meals, is able to clean and do laundry, drives, shops in stores, and spends time with others.   (Tr. 199-200, 454-57.)   Additionally, Moore indicated to Dr. Karshner that she drives and does housework.   (Tr. 200, 552.)

The ALJ then addressed the medical opinion evidence.   On November 25, 2015, consultative examiner Dr. Karshner expressed the opinion that Moore "demonstrates the ability to perform and sustain work-related functions including sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling essentially without restrictions." (Tr. 554.)   The ALJ indicated that he was assigning only "some weight" to Dr. Karshner's opinion, because the record supports some limitations.   (Tr. 200.)   He explained that Moore has various impairments, including coronary artery disease, obesity, and degenerative disc disease. *Id.*   With regard to her degenerative disc disease, the ALJ noted that a December 2016 examination revealed Moore had an antalgic gait and tender points present in the lower back. (Tr. 200, 571.)   Because of this evidence, the ALJ found that Moore is capable of only a limited range of light work.   (Tr. 200.)   He stated that this RFC accounts for Moore's combination of impairments and symptoms, including pain.   *Id.*

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians."   *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)).   The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)).   The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012).   Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion.   20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.   20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Moore argues that the ALJ erred in assigning weight to Dr. Karshner's opinion "while giving no weight to Plaintiff's treating physicians."   (Doc. 20 at p. 5.)   None of Moore's treating physicians, however, expressed an opinion regarding Moore's ability to work.   Indeed, Moore points to no opinion finding any work-related limitations.

Instead, Moore cites medical records documenting primarily her subjective complaints of pain.   In some instances, the notes contain findings on examination, such as pain with range of motion of the back and lumbar paraspinal tenderness documented in a January 22, 2016 examination.   (Tr. 582.)   At this particular visit with her primary care physician, Moore reported a pain level of 4 on a scale of 1 to 10, and reported having no functional limitations.

(Tr. 580.)   She described her lower back pain on this visit and previous ones as intermittent, mild in severity, dull, and with no radiation.   (Tr. 580, 527, 531, 535.)   Moore states that she began seeing pain relief specialist Andrew Walker, M.D., who diagnosed her with radiculopathy after she reported pain radiating down into her legs and underwent the lumbar MRI in June 2016. (Tr. 559.)   Moore points out that Dr. Walker found she had "some measurable symptoms in her left leg," including weakness and numbness, and recommended epidural steroid injections.   (Tr. 562.)   She also notes she was prescribed muscle relaxant medication to treat her back pain.   (Tr. 582.)

Moore fails to point to any error.   "As is true in many disability cases, there is no doubt that [claimant] is experiencing pain."   *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability."   *Perkins*, 648 F.3d at 900.

The ALJ acknowledged that Moore suffers from low back pain related to her degenerative disc disease, and that an MRI revealed a disc protrusion.   Although the treatment notes contain pain complaints, Moore has not demonstrated that her pain precludes her from performing a limited range of light work.   In fact, Moore's own statements in the medical record suggest her pain was less than disabling.   For example, at an August 2016 visit, Moore reported improvement of her lower back pain with injections.   (Tr. 593.)   She stated that she "still has to be careful with the amount of activity she does or pain does return."   *Id.*   Similarly, in February 2017, Moore reported that her pain was worst on "work days," and that she had to take "disability leave" from her "physical job" because her job functions caused pain and fatigue. (Tr. 595.)   She reported that the injections she was receiving helped her back pain.   *Id.*   On

August 28, 2017, Moore reported that the injections were helping her back pain, and that she did not take pain medication regularly but only took it one or two times a week at the most.   (Tr. 597.)   Moore complained of right foot pain and swelling in June 2018, but only after "walking up and down steps at Busch stadium."   (Tr. 172.)   At that time, she reported that her prescribed pain medication "has helped considerably" with her fibromyalgia pain symptoms.   *Id.*

The ALJ properly evaluated the medical evidence of record.   "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."   *Wildman v. Astrue,* 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)).   Moore does not point to any findings in the treatment notes that demonstrate her impairments caused more limitations than those found by the ALJ.   Although Moore objects to the ALJ's assignment of some weight to Dr. Karshner's opinion, the ALJ did not rely on this opinion.   Instead, he found Moore was limited to some extent in her ability to work due to her combination of impairments and pain.

Moore argues that the ALJ erred in failing to give her any credit for her good work history in determining the credibility of her subjective complaints.[3]   Specifically, Moore notes that she worked consistently at the substantial gainful activity level until her alleged onset date, and even worked when she was suffering mental distress from the tragic deaths in her family fifteen years prior to the hearing.

In evaluating subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), "the claimant's prior work history; daily activities;

---

[3]Social Security Ruling (SSR) 16-3p eliminated the term "credibility" from the analysis of subjective complaints.   However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged."   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (citing *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)). Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Mouser v. Astrue,* 545 F.3d 634, 638 (8th Cir. 2008). The ALJ is not required to discuss each *Polaski* factor as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (citing *Goff,* 421 F.3d at 791).

Here, it is true that Moore had a good work history that the ALJ did not acknowledge when discussing her credibility. The Court agrees that a claimant's credibility is enhanced by a long and substantial work record. A good work history, however, does not negate any other credibility findings that may be made by the ALJ. In this case, although Moore has a good work history, the ALJ found other reasons to discredit her credibility. Specifically, the ALJ pointed to Moore's daily activities, the limited findings on examination, and the lack of any functional limitations by examining physicians. Thus, the Court finds that any error in failing to specifically mention Moore's good work history was harmless. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred).

The Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. In his discretion, the ALJ made an RFC finding that did not precisely reflect a medical opinion of record. *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions). The ALJ's

determination is supported by the examination findings of Dr. Karshner, and Dr. Karshner's opinion that Moore could work with essentially no limitations.   The ALJ nonetheless properly credited Moore's allegations of pain that were supported by the record in limiting her to a range of light work.   Moore fails to demonstrate the presence of greater limitations than those found by the ALJ.

### 2.    Ability to Perform Past Relevant Work

Moore next argues that the ALJ erred in finding she could perform her past relevant work as a cashier at step four.   Moore contends that she requires breaks beyond the typical breaks allowed by employers (one in the morning, lunch, and afternoon); and that both vocational experts[4] testified that an individual requiring more breaks would be unemployable.

The hypothetical question posed to the vocational expert was consistent with the ALJ's RFC determination.   (Tr. 220.)   The vocational expert testified that such an individual could perform Moore's past jobs as a cashier, customer service representative, and counter salesperson. *Id.*   The ALJ found in his decision that Moore could perform her past work as a cashier.   (Tr. 200.)   He went on to find in the alternative that Moore could perform other jobs existing in significant numbers in the national economy.   *Id.*

Because the Court has found that the ALJ's opinion considered and accounted for any limitations caused by Moore's impairments, the Court finds no error with the hypothetical question posed to the vocational expert.   "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question."   *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).   A "hypothetical question posed to a vocational expert

---

[4]A supplemental administrative hearing was held in this case in which a new vocational expert testified due to Moore's objection to the testimony of the vocational expert at the first hearing. (Tr. 210.)

must capture the concrete consequences of claimant's deficiencies." *Pickney*, 96 F.3d at 297. "[T]he ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* at 296. "However, the hypothetical question need only include those impairments which the ALJ accepts as true." *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005). While expressing disagreement with the ALJ's limitations as being insufficient, Moore has not meet her burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Thus, the ALJ's decision finding Moore not disabled is supported by substantial evidence on the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2020.